UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| BENJAMIN WATTS, ) | |
| ) | |
| Plaintiff, ) | Civil No. 3:16-cv-00040-GFVT |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| CARROLL COUNTY FISCAL COURT, et ) | **&** |
| al., ) | **ORDER** |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Officers from the Carroll County Fiscal Court fired Benjamin Watts from his position as Carroll County Director of Parks and Recreation. Watts then sued Carroll County Fiscal Court and County Judge-Executive Bobby Lee Westrick for violations of the Fair Labor Standards Act and Kentucky Wage and Hour Act. The Defendants seek summary judgment, but because a genuine issue of material fact remains on a number of Watts's claims, the Court will GRANT IN PART and DENY IN PART the Defendants' motion.

**I**

**A**

On January 5, 2015, Benjamin Watts was hired as the Carroll County Director of Parks and Recreation by County Judge-Executive Bobby Lee Westrick[1]. Although Watts was never given a formal job description, Judge-Executive Westrick stated that Watts's role as director

---

[1] The following factual summary is drawn primarily from Watts' response to the Defendants' motion for summary judgment. [*See* R. 24.] Because Carroll County Fiscal Court seeks summary judgment, all facts are construed in the light most favorable to Watts, the non-movant. *See, e.g.*, *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

would be to "oversee the Park & Recs of the Carroll County Park, completely." [R. 23-1 at 8; R. 23-5 at 2.] Despite this articulation of Watts's role, Westrick also later informed Watts that he should not question or second-guess the ways Westrick handled issues regarding other park employees. [R. 24 at 4.] When asked to personally describe his duties as director, Watts stated that they included supervising and training park employees, even though he never "technically supervise[d] anyone", as well as pursuing new Parks and Recreation programs. [*Id.* at 3-6.]

Watts experienced confusion over his wages a number of times during his tenure as Carroll County Parks and Recreation Director. When Watts was initially hired at the start of January 2015, he was told the position was a $30,000.00 per year salaried role. Nevertheless, Watts was required to submit a time sheet every week indicating how many hours he worked. [*Id.* at 2.] Watts believed that, as a salary employee, he would receive fifty-two equal paychecks over the course of the year. But when he received his first paycheck on Friday, January 9, 2015, it was for an amount less than he expected, and he did not understand why. [*Id.* at 2-3.] Carroll County Fiscal Court now explains that Watts's first paycheck was simply pro-rated to reflect the fact that he started his employment halfway through the week. [*See* R. 25 at 7 (explaining the mathematics behind Watts's weekly paycheck calculations).] Beyond that incident, Watts received the amount of money he expected per week going forward, and he continued as a salary employee for the duration of 2015. [*See* R. 23-8.]

At the turn of the new year, though, things changed. On January 4, 2016, County Judge-Executive Westrick approached Watts and asked him why he was reporting more than forty hours per week on his time sheets. [R. 24 at 5.] Watts informed Westrick that he was merely documenting the hours he worked every week as originally instructed. [*Id.*] According to Watts, Westrick then instructed him to keep track of any hours in excess of forty "in his head" and to

use those hours as "comp time" rather than reporting it on a time sheet. [*Id.*] This confused Watts, so he asked both Judge-Executive Westrick and his personal lawyer to further explain the matter.

After Watts sought clarification from Westrick, Westrick sent Watts a memorandum imposing new conditions of employment on his Parks and Recreation position. The memorandum informed Watts "that he had no supervisory authority and, thus, could no longer work over forty hours per week without [Westrick's] prior approval." [*Id.*] The new conditions also confined Watts to his office between the hours of 8:30 a.m. and 4:30 p.m., to ensure he worked only forty hours per week. This posed a problem for Watts, as his schedule was previously flexible enough to allow him to attend to certain personal tasks like picking up his child from school. [*Id.*] Watts was also classified as an hourly employee, rather than a salaried one, going forward. [*Id.* at 6.] According to Westrick, these new conditions were imposed because of Watts's lackluster performance as Parks and Recreation Director. [*Id.* at 5-6.]

Not long after the new conditions were imposed, Watts was terminated from his employment with Carroll County. [*Id.* at 7.] Carroll County Fiscal Court officers informed Watts that his position was no longer needed and that "several issues" led to his discharge. [*Id.*] Following his termination, Watts filed this civil action alleging various violations of the Fair Labor Standards Act and the Kentucky Wage and Hour Act from the time he served as Director of Carroll County Parks and Recreation, during which he frequently worked in excess of forty hours per week but was never paid overtime compensation. [*See* R. 1.] The Defendants Carroll County Fiscal Court and Judge Executive Westrick, in his official capacity, seek summary judgment on all of Watts's claims. [R. 23.]

**B**

According to Federal Rule of Civil Procedure 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Morales v. Am. Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 455 U.S. at 255). Further, the Court must view all facts and draw all reasonable inferences in favor of the nonmoving party." *See, e.g.*, *Matsushita*, 475 U.S. at 587.

**II**

Carroll County Fiscal Court moves for summary judgment on all of Watts's claims. Specifically, Carroll County claims that (A) Watts was not an "employee" for purposes of the Fair Labor Standards Act ("FLSA") and, thus, not entitled to overtime compensation; (B) if Watts was an "employee" under the FLSA, he was an exempt employee who still was not entitled to overtime compensation; and (C) Watts is not entitled to any relief under the Kentucky Wage and Hour Act. The Court addresses each of these arguments in turn.

## A

First, Carroll County contends Watts was not an "employee" under the FLSA. In general, the FLSA requires employers to pay a minimum wage to all employees and also requires employers to pay an overtime wage to employees who work more than forty hours per workweek. *See* 29 U.S.C. §§ 206(a), 207(a). The FLSA excludes from these requirements, however, certain individuals employed by a state or political subdivision of a state, including any individual:

> (i) who is not subject to the civil service laws of the State, political subdivision, or agency which employs him; and
>
> (ii) who—
>
>> (I) holds a public elective office of that State, political subdivision or agency,
>>
>> (II) is selected by the holder of such an office to be a member of his personal staff,
>>
>> (III) is appointed by such an officeholder to serve on a policymaking level,
>>
>> (IV) is an immediate adviser to such an officeholder with respect to the constitutional or legal powers of his office, or
>>
>> (V) is an employee in the legislative branch or legislative body of that State, political subdivision, or agency and is not employed by the legislative library of such State, political subdivision, or agency.

29 U.S.C. § 203(e)(2)(C). No one disputes the fact that Watts was not subject to civil service laws, so the first prong of the two prong exception test is satisfied. [*See* R. 23-1; R. 24.] As for the second prong, Carroll County Fiscal Court argues Watts's position as Director of Parks and Recreation fell within the policymaking exception in section 203(c)(2)(C)(ii)(III). If Carroll County is correct, Watts would not be an "employee" for purposes of the FLSA and was not entitled to any overtime compensation during his time there.

5

Courts interpret the policymaking exception in a variety of ways. While the Seventh Circuit extends the exception to employees who merely implement policies or offer suggestions about policies, the Second Circuit, for example, has held that the exception applies only to employees who work closely with and are specifically held accountable to their appointers. *Compare Opp v. Office of State's Att'y of Cook Cnty.*, 660 F.3d 616 (7th Cir. 2010) *with EEOC v. Vermont*, 904 F.2d 794, 800 (2d Cir. 1990). *See also* Angela Galloway, *A "Narrow Exception" Run Amok: How Courts Have Misconstrued Employee-Rights Laws' Exclusion of "Policymaking" Appointees, and a Proposed Framework for Getting Back on Track*, 86 WASH. L. REV. 875 (2011).

The Sixth Circuit has provided limited guidance on the issue except to state that the FLSA's policymaking exception is interpreted consistently with its Title VII counterparts. *Birch v. Cuyahoga Cnty. Probate Ct.*, 392 F.3d 151, 160 (6th Cir. 2004). The Sixth Circuit has also favorably cited a list of relevant factors that were articulated in *Teneyuca v. Bexar County*, 767 F.2d 148 (5th Cir. 1985), as a tool for evaluating this kind of claim. *See Birch*, 392 F.3d at 161; *see also Marburger v. Upper Hanover Twp.*, 225 F. Supp. 2d 503 (E.D. Pa. 2002) (applying *Teneyuca* factors to the FLSA policymaking exception). These non-exhaustive factors include (1) whether the elected official has plenary powers of appointment and removal or, put another way, whether the appointee serves at the pleasure of the appointing authority; (2) whether the appointee is personally accountable to only that elected official; (3) whether the appointee represents the elected official in the eyes of the public—i.e., whether the appointee can speak on behalf of the policymaker; (4) whether the appointee has discretionary rather than administrative powers; (5) the level of the position within the organization's chain of command; and (6) the actual intimacy of the working relationship between the elected official and the appointee.

*Teneyuca*, 767 F.2d at 151; *Marburger*, 225 F. Supp. 2d at 510-14. *See also Gomez-Mesquita v. City of Detroit*, No. 06-12844, 2007 WL 2225859, at *3 (E.D. Mich. Aug. 2, 2007). Notably, the *Teneyuca* court acknowledged that using factors such as these to determine the applicability of a particular exception "does not lend itself well to disposition by summary judgment." *Id.* at 152.

When the Court considers these factors in the context of Watts's case, the Court is unable to grant summary judgment in favor of Carroll County. To succeed on their summary judgment motion, the Defendants must show that no reasonable jury could find that Watts lacked sufficient influence over policymaking to qualify for the FLSA's policymaking exception. *See Bacon v. Eaton Corp.*, 565 F. App'x 437, 440 (6th Cir. 2014). While some factors weigh in support of the policymaking exception, the Court cannot conclude no reasonable jury could return a verdict otherwise.

In support of the policymaking exception, Carroll County relies on testimony from Judge-Executive Westrick explaining that he hired Watts to "completely" oversee the Parks and Recreation Department. [R. 23-1 at 8; R. 23-5 at 2.] Westrick went on to state that Watts was "director of the whole park out there" and that Watts's duties involved "[a]nything [that] pertains to the park." [R. 23-1 at 8; R. 23-5 at 2.] According to Carroll County, this demonstrates that Judge Westrick "lacked the personal knowledge or experience to effectively determine County policy with regard to the Parks and Recreation Department." [R. 23-1 at 8.] Furthermore, other evidence of record, such as the fact that Westrick did personally appoint and subsequently remove Watts, supports a finding of policymaking under the relevant factors. *See Teneyuca*, 767 F.2d at 151.

But while this may be true, there is simply not enough evidence for the Court to conclude Watts was actively involved in shaping Carroll County Parks and Recreation policy. Watts

7

testified that it was his responsibility to create and implement goals and strategies for the Parks and Recreation department, but that he also had to seek permission to implement those goals and strategies. [R. 23-3 at 15.] Watts testified that he "thought" he was responsible for developing a Parks and Recreation department budget, but that once the budget left his hands, it was altered before final approval. [*Id.*] And while Carroll County Fiscal Court points to many emails Watts sent to other employees with policymaking suggestions [*see* R. 25-1 *through* 25-10], there is insufficient evidence for the Court to conclude as a matter of law that Watts was actually responsible for making those policy ideas come to life. As Watts emphasizes in his sur-reply, Westrick expressed frustration that Watts was "constantly" sending him "long emails" about different programs Watts wanted to pursue, despite Westrick communicating to Watts that the County was not, in fact, going to pursue the suggested policy changes. [R. 34 at 3; R. 34-2.]

While some evidence of policymaking does exist, Watts has presented sufficient evidence to establish that genuine issues of material fact remain. This is particularly true in light of the fact that the applicability of the policymaking exception is typically a question for the fact-finder and that application of the exception should be narrowly construed. *See Teneyuca*, 767 F.2d at 152; *Gomez-Mesquita*, 2007 WL 2225859, at *4. Accordingly, summary judgment is inappropriate on this issue.

**B**

In the alternative, Carroll County argues that if Watts is, in fact, considered an "employee" for purposes of the FLSA, he is an exempt administrative employee pursuant to 29 U.S.C. § 213(a)(1). The administrative employee exemption applies where an employee is:

   (1) Compensated on a salary or fee basis at a rate of not less than $455 per week
   . . . exclusive of board, lodging and other facilities;

   (2) Whose primary duty is the performance of office or non-manual work directly

> related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a). *See also* 29 U.S.C. § 213(a); *Henry v. Quicken Loans, Inc.*, 698 F.3d 897, 899 (6th Cir. 2012). Courts also construe this exemption narrowly, and the employer bears the burden of proving each element of the exemption by a preponderance of the evidence. *See Burton v. Appriss, Inc.*, 682 F. App'x 523, 527 (6th Cir. 2017); *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640, 642 (6th Cir. 2013). Moreover, the application of this exemption is generally considered a question of fact. *See Chao v. Double JJ Resort Ranch*, 375 F.3d 393, 395-96 (6th Cir. 2004).

In Watts's case, the first requirement of the administrative exemption is satisfied during the time that he was a salary employee. Watts's personnel file as well as his deposition testimony confirm that he was making at least $30,000.00 annually, or at least $576.92 per week. [*See* R. 23-3 at 2; R. 23-7; R. 23-8.] But the other two requirements—both of which are concerned with Watts' "primary duty" as Parks and Recreation Director—remain in dispute. *See Burton*, 682 F. App'x at 427 (noting the focus of both the second and third factors is an employee's primary duty). While this issue may sometimes be resolved as a matter of law, it is generally more appropriate for a factfinder to address than for the Court. *See Henry*, 698 F.3d at 901 (compiling cases emphasizing the factual nature of the primary duty inquiry). Like with the policymaking exception, the Court is ultimately unable to conclude at this time that the administrative exemption applies to Watts's employment as Carroll County Parks and Recreation Director.

The second prong of the administrative exemption test requires an employee's primary

9

duty to involve "office or non-manual work directly related to the management or general business operations" of the employer. 29 C.F.R. § 541.200(a)(2). While the record does not contain a written job description for Watts's position, his deposition testimony suggests his primary duty could be viewed as management-related. When asked to describe his duties, Watts testified as follows:

> Q. How would you describe your duties?
>
> A. I would best describe them as it was my responsibility to create and manage recreational and sports programs for the community both for youth and adults. To manage and oversee the county park and the associates that were employed to work at the park. And that included the pool, the county pool that was – that was at the park as well.
>
> And then we also had an after-school program that we had a few employees who worked with the school as part of a grant that was created before I was ever the director, and just to kind of manage and oversee that as well.

[R. 23-3 at 7-8.] Watts also testified that he trained Parks and Recreation employees and directed them to perform certain tasks. [*Id.* at 9-11.] Watts stated that he made recommendations about equipment or materials to be purchased, although he was not the one with final purchasing authority. [*Id.* at 11-12.] And Watts ultimately testified that he believed his primary duty was "to manage." [*Id.* at 12.]

On the other hand, Watts contends his primary duty did not involve "office or non-manual work" as required under the regulation. [*See* R. 24 at 10.] According to Watts, Judge-Executive Westrick told him that it was his responsibility to pick up trash around the park and to personally deliver checks to employees. [*See, e.g.*, R. 24-1 at 11.] And Watts also helped other employees with various manual projects, such as putting wind screens around batting cages, pumping water out of the park fields, and transporting bags full of sports equipment. [R. 23-3 at 12-13.]

10

When viewing the facts in the light most favorable to Watts, his manual labor activities do not preclude a conclusion that his primary duty was management-related. Courts have noted that employees "can perform some manual work without losing exempt status," particularly where manual tasks are merely incidental to a primary, non-manual duty such as managing the park and its employees on the whole. *See Schaefer v. Indiana Michigan Power Co.*, 358 F.3d 394, 401 (6th Cir. 2004); *Krupinski v. Laborers Eastern Region Org. Fund*, No. 15-cv-982, 2016 WL 5800473, *5-6 (S.D.N.Y. Sept. 30, 2016). Here, Watts's occasional labor-heavy tasks appear to be peripheral to his supervisory role as a manager of the Carroll County Parks and Recreation department. This conclusion is bolstered by the fact that Judge-Executive Westrick confined Watts to his office for a period of time: this suggests that Westrick believed Watts could carry out his duties as Parks and Recreation Director from behind a desk. [*See* R. 24-5.]

But while certain evidence suggests the second prong of the test is satisfied, Carroll County Fiscal Court must still prove the third prong, known as the discretion-and-independent-judgment prong. *See Henry*, 698 F.3d at 900. This part of the test requires Carroll County to demonstrate that Watts's primary duty "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R.§ 541.202(a). "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." *Id.* This prong can be satisfied even if an employee is subject to "active supervision" or if his work is "heavily regulated." *See Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 504 (6th Cir. 2007); *Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512, 519 (6th Cir. 2004).

Conflicting evidence on this point precludes the Court from entering summary judgment

11

in favor of the Defendants. As described at the outset, County Judge-Executive Westrick originally told Watts his role would be to "oversee the Park & Recs of the Carroll County Park, completely." [R. 23-1 at 8.] Watts testified that Westrick told him that "he didn't know anything about [Parks and Recreation] and that he just needed somebody to come in and clean it up." [R. 23-1 at 7.] And Watts was allegedly tasked with a number of decision-making responsibilities, such as developing a budget, creating a website, recommending certain personnel actions, and more. [*See* R. 23-1 at 13 (citing Watts's deposition testimony); R. 25 at 8.] These points suggest Watts had sufficient authority to make decisions out of his own discretion and independent judgment.

Nevertheless, the evidence also suggests that Westrick was really the party in control of Parks and Recreation decision-making. Westrick complained during his deposition of "long emails" Watts used to send him suggesting new programs the Parks and Recreation department could pursue. [R. 24-3 at 2; *see also* R. 25-1 *through* R. 25-10.] According to Westrick, he told Watts "no, that we're not going to pursue different issues, different programs that goes on in the school at this county park. No." [R. 24-3 at 2.] Westrick then complained of Watts's persistence in sending recommendations. [*Id.*] On one occasion, Westrick apparently gave Watts grief for ordering a storage building with a green roof, instead of the blue roof Westrick had requested. [R. 24 at 7.] And Watts testified that at one point when he tried to recommend Westrick take certain personnel actions, Westrick responded that "he was the one who could fire me and that I was not to question his decisions." [R. 24-1 at 7.]

Ultimately, Watts testified that he did not know the extent of his discretion and independent judgment abilities: "[T]he further into the position, the longer that I was in that position, the more muddied the waters were as far as what I was and was not able to do or what I

12

did or did not have the authority to do. Did I make recommendations, absolutely. . . . Did I have the authority to do so? Your guess is as good as mine." [R. 24-1 at 7.]

The Court's role is not to make credibility determinations between conflicting witnesses or to usurp the jury's role in weighing evidence. *See Morales*, 71 F.3d at 535. Instead, the Court considers only whether no reasonable jury could find in favor of Mr. Watts. Fed. R. Civ. P. 56; *Liberty Lobby*, 477 U.S. at 248. Like with the policymaking exception, the Court cannot conclude that no jury would find Watts was a non-exempt administrative employee entitled to overtime compensation. While "active supervision" from a supervisor does not totally preclude an employee from exempt status, there remains a question of fact in this case as to how much independent decision-making capability Watts truly had as Parks and Recreation Director. *See, e.g.*, *Thomas*, 506 F.3d at 504. Summary judgment, therefore, must also be denied on this point.

## C

Because the Court has denied summary judgment on the FLSA claims, the Court will also deny summary judgment on the pending Kentucky Wage and Hour Act ("KWHA") claims. Pursuant to the KWHA, a plaintiff bears the burden of proving whether he or she is considered an employee entitled to overtime wages under Kentucky law. *See City of Louisville, Division of Fire v. Fire Serv. Managers Ass'n*, 212 S.W.3d 89 (Ky. 2006). While the KWHA is structurally distinct from the FLSA, both Watts and Carroll County Fiscal Court acknowledge that the FLSA claims and KWHA claims are closely related, and the parties suggest the Court cannot rule on one statute without also reaching a conclusion as to the other. [R. 23-1 at 17; R. 24 at 13.]

The Court agrees with the parties that the claims are closely related. As there is insufficient evidence to resolve the FLSA claims as a matter of law, the Court also finds that it cannot grant summary judgment on the KWHA arguments. Watts's classification under both

statutory schemes will be better addressed by a jury in the context of trial.

**D**

There is, however, one issue on which the Defendants will be granted summary judgment. For a period of time, the record demonstrates that Watts was an hourly, not salary, employee. [*See, e.g.*, R. 24-5 (informing Watts of the change in his employment status.] From May 13, 2016, onward, Carroll County admits that Watts was employed as a non-exempt hourly employee. Accordingly, Carroll County would be required to pay Watts overtime for any hours worked in excess of forty per workweek. [*See* R. 23-1 at 14-15; *see also* R. 24-7 (memorializing Westrick's belief that Watts was "no longer considered an exempt employee" inasmuch as he no longer had "supervision duties over multiple employees).]

Watts admits that he never worked more than forty hours a week during this time period. [R. 23-3 at 20; *see also* R. 23-8.] In light of this testimony, the Court finds as a matter of law that the Defendants definitively did not violate Watts's FLSA or KWHA rights from May 13, 2016, through the day his employment ended. Summary judgment is, therefore, granted in favor of the Defendants on this issue only.

**III**

For the reasons articulated above, the Court finds that the Defendants' motion for summary judgment [R. 23] is **GRANTED IN PART** but **DENIED IN PART**. The motion is **GRANTED** in favor of the Defendants on Watts's claims that relate to the time period during which he was an hourly, rather than salary, employee. *See* Section II(D), *supra*. However, the motion is **DENIED** in all other respects.

14

This the 25th day of August, 2017.

Gregory F. Van Tatenhove
United States District Judge